FILED

SEP 03 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDWARD J. BYLSMA,

        Plaintiffs,

v.

BURGER KING CORPORATION, a Florida corporation; and KAIZEN RESTAURANTS, INC., an Oregon corporation,

        Defendant.

CV 10-403-PK

FINDINGS AND RECOMMENDATION

PAPAK, Judge:

        Plaintiff Bylsma seeks compensatory and punitive damages for physical injuries and emotional distress suffered when he ordered a hamburger from a Burger King in Vancouver, Washington and discovered a glob of human saliva on the meat patty. Plaintiff states claims under Oregon law for: (1) product liability; (2) negligence; and (3) vicarious liability based on respondeat superior. Defendant Burger King is incorporated in the state of Florida, while

Page 1 - FINDINGS AND RECOMMENDATION

defendant Kaizen Restaurants, the franchisee of the Burger King restaurant, is incorporated under the laws of Oregon with its principle place of business in Oregon. Bylsma is a citizen of Washington. This court has jurisdiction under 28 U.S.C. § 1332 (diversity).

Now before the court is defendants' motion for judgment on the pleadings (#14) pursuant to Fed. R. Civ. P. 12(c). Defendants' motion should be GRANTED, for the reasons set forth below.

## FACTS

Bylsma is a Clark County, Washington sheriff's deputy. At 1:50 a.m. on March 24, 2009, Bylsma went to a Vancouver, Washington Burger King drive-thru and ordered a Whopper with cheese. Bylsma was uneasy about the encounter at the drive-thru and pulled over to examine his burger. Upon inspection he found not only cheese, but also "a slimy, clear and white phlegm glob on the meat patty." (Complaint, #1, ¶ 2.5.) Bylsma touched the substance, became convinced that it was phlegm, and took a photo and video of the burger.

Clark County sheriffs collected evidence from the burger and the substance was analyzed by a crime lab and identified as human saliva. Search warrants were obtained for two Burger King employees and oral swabs were obtained. Test results identified Burger King employee Gary Herb as a match to the DNA profile from the substance. Herb was arrested and pleaded guilty to felony assault.

## LEGAL STANDARDS

### I.     Judgment on the Pleadings Standard

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings."

Page 2 - FINDINGS AND RECOMMENDATION

Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings, like a motion to dismiss for failure to state a claim, addresses the sufficiency of a pleading. Judgment on the pleadings may be granted when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). In testing the sufficiency of a pleading, the well-plead allegations of the non-moving party are accepted as true, while any allegations of the moving party which have been denied are assumed to be false. *Id.* at 1550. However, the court need not accept conclusory allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## DISCUSSION

### I. Choice of Law

When the laws of more than one jurisdiction arguably apply to an issue, a federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Oregon law, the court first determines if the laws of Oregon and the competing state have an actual conflict. *Webber v. Olsen*, 157 Or. Ct. App. 585, 590, 971 P.2d 448 (1998), *overruled on other grounds*, 330 Or. 189 (2000). The proponent of applying the law of another forum has the obligation to identify material differences between the laws of the other potential forum states. *Waller v. Auto-Owners Ins. Co.*, 174 Or. Ct. App. 471, 475, 26 P.3d 845 (2001).

Next, if there is an actual conflict, the court determines if either or both states have a substantial interest in the dispute. *Webber*, 157 Or. Ct. App. 593 (citing *Lilienthal v. Kaufman*, 239 Or. 1, 16 395 P.2d 543 (1964)). Oregon courts use the "most significant relationship" test to

Page 3 - FINDINGS AND RECOMMENDATION

make this determination, considering which state had the most significant relationship to the parties and the transaction. *Id.* (quoting *Stricklin v. Soued*, 147 Or. Ct. App. 399, 404, 936 P.2d 398, *rev. denied*, 326 Or. 58, 944 P.2d 948 (1997).

Finally, if Oregon has a substantial interest in the dispute but the competing state has the most significant relationship to the dispute, the court decides whether Oregon's interest is so important that the competing state's law should not be applied, despite the significant connection with the competing state. *Webber*, 157 Or. Ct. App. at 593.

### 1. **Actual Conflict**

Defendants have identified two differences between the laws of Oregon, Washington, and Florida. First, Bylsma seeks punitive damages, the availability of which differs in each state. Oregon law allows recovery of punitive damages in product liability cases. *See* Or. Rev. Stat. §§31.730, 30.925. In contrast, the Washington Product Liability Act (WPLA), Wash. Rev. Code §7.72 et seq., which would govern Bylsma's claims if Washington law applied, does not authorize recovery of punitive damages. Finally, in Florida, there are statutory limits on punitive damages, and punitive damages are not allowed on claims based on vicarious liability. Fla. Stat. §§ 768.72, 768.73.

Second, Washington, Oregon, and Florida law differ in the range of available remedies for products liability. In Washington, the WPLA is the exclusive remedy for product liability claims. The WPLA preempts previously existing common law remedies, including actions for negligence, in favor of creating a single cause of action for product-related harms. *Washington State Physicians Ins. Exchange & Ass'n v. Fision Corp.*, 122 Wash.2d 299, 858 P.2d 1054 (1993). In contrast, Oregon law permits a plaintiff to proceed under different theories of

Page 4 - FINDINGS AND RECOMMENDATION

recovery, just as Bylsma has done in his complaint. Finally, Florida law contains an unique "ingestion requirement" for cases like these, preventing recovery unless the plaintiff actually ingests the contaminated food. *See Doyle v. The Pillsbury Co.*, 476 So. 2d 1271 (Fla. 1985) (no recovery in negligence where plaintiff observed a large insect floating in a newly opened can of peas because plaintiff never ingested any of the food).

Although Bylsma concedes that different outcomes would result depending on whether Oregon or Washington law is applied, he argues that the difference in outcome does not create an actual conflict under Oregon law unless both states have a substantial interest in having their law apply. (Pl.'s Br., #17, at 5) (quoting *Cropp v. Interstate Distributor Co.*, 129 Or. Ct. App. 510, 515, 880 P.2d 464 (1994) (Rossman, P.J., dissenting)). I do not agree. Oregon courts follow a sequential approach to conflicts of law questions, analyzing the presence of an actual conflict before addressing whether the states have a substantial interest in the dispute. *See, e.g., Webber v. Olsen*, 157 Or. Ct. App. 585, 590, 971 P.2d 448 (1998), *overruled on other grounds*, 330 Or. 189 (2000).

### 2.   Most Significant Relationship

Oregon courts consider the factors enumerated in the Restatement (Second) of Conflicts (1971) to determine which state has the most significant relationship to the parties and the action. *Fisher v. Huck*, 50 Or. Ct. App. 635, 638, 624 P.2d 177, 178 (1981). These factors include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflicts §145(2) (1971); *Erwin v. Thomas*, 264 Or. 454, 456 & n. 2,

Page 5 - FINDINGS AND RECOMMENDATION

506 P.2d 494 (1973). Moreover, the comments to the Restatement §145 note that "subject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied." Restatement (Second) of Conflicts §145(2) cmt. d (1971).

Bylsma argues that Oregon has the most signification relationship with the action, but applying the Restatement factors to his allegations suggests otherwise. First, the Burger King restaurant that served Bylsma's hamburger was located in Vancouver, Washington and thus Bylsma's alleged injury occurred in Washington. (Complaint, #1, ¶¶2.1-2.6.) Second, the conduct causing that alleged injury (the act of a Burger King employee spitting on Bylsma's hamburger) also occurred in Washington. (Id. at ¶¶2.1-2.5.) Third, although defendants are incorporated in Oregon and Florida, they are physically located in and doing business in the state of Washington. The only tie to Oregon is defendant Kaizen's incorporation in Oregon, which alone is not sufficient to create a significant relationship when all the other factors point to another state. *See Powell v. Equitable Sav. and Loan Ass'n*, 57 Or. Ct. App. 110, 114, 643 P.2d 1331, 1333, *rev. denied* 293 Or. 394, 650 P.2d 927 (1982). Finally, the relationship between the parties is centered is Washington. The service of the contaminated hamburger, the issuance of search warrants, the saliva testing, and the criminal plea by the Burger King employee all occurred in Washington. (Complaint, #1, ¶¶2.1-2.10.). Overall, Washington has the most significant relationship to the parties and this action, while Oregon has no substantial interest in this dispute. Thus, Washington law applies to Bylsma's claims.

## II.    Applying the Washington Product Liability Act

Under Washington law, Bylsma's claims must proceed solely under the Washington Product Liability Act ("WPLA"). The WPLA provides that:

Page 6 - FINDINGS AND RECOMMENDATION

> (1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.
>
> . . .
>
> (2) A product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW.

Wash. Rev. Code § 7.72.030 (2010). The definitional section of the WPLA suggests that product liability claims within the scope of the Act include actions resulting from preparation and assembly of food in a restaurant. *See* Wash. Rev. Code § 7.72.010(4) ("'Product liability claim' includes any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product."); *accord Almquist v. Finley School District*, 114 Wash. App. 395, 405, 57 P.3d 1191 (2002) (school district's preparation and service of ground beef tacos for school lunches made the district a manufacturer within the scope of the WPLA). Bylsma's action concerning Burger King's preparation of a hamburger thus must also be analyzed under the WPLA.

Moreover, when the WPLA applies to claims, it preempts other causes of action unless they are expressly exempted. Both the text of the WPLA and subsequent case law illustrate that the statute preempts other common law remedies. *See* Wash. Rev. Code § 7.72.010(4) (a product liability claim includes "any claim or action previously based on: Strict liability in tort; negligence; breach of express or implied warranty; breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or

Page 7 - FINDINGS AND RECOMMENDATION

nondisclosure, whether negligent or innocent; or other claim or action previously based on any other substantive legal theory except fraud, intentionally caused harm or a claim or action under the consumer protection act, chapter 19.86 RCW"); *Washington Water Power Co. v. Graybar Electric Co.*, 112 Wash. 2d 847, 854-55, 774 P.2d 1199 (1989) (text and legislative history of the WPLA show that the WPLA preempts common law remedies and the WPLA "would accomplish little if it were a measure plaintiffs could choose or refuse to abide at their pleasure."). Given the preemptive effect of the WPLA, Bylsma's claims arise only under the WPLA.

### A.   Emotional Distress Damages

Bylsma's allegation that he suffered emotional distress from being presented with a contaminated hamburger are not actionable under the WPLA. To determine whether emotional distress damages are available for a statutory cause of action, Washington courts first analyze whether the statute is silent as to whether those damages are available, and if so, permit emotional distress damages only if the statute requires intentional conduct to impose liability. *See White River Estates v. Hiltbruner*, 134 Wash. 2d 761, 766-69, 953 P.2d 796 (1988) (emotional distress damages not available for unreasonable withholding of consent to assignment under Washington's Mobile Home Landlord Tenant Act because the statute was "silent regarding damages" and the statute may be violated by conduct not amounting to an intentional tort); *c.f. Washington State Physicians Exchange & Association v. Fisons Corp.*, 122 Wash. 2d 299, 318-22 858 P.2d 1054 (1993).

### 1.   WPLA Silent

Washington courts have clarified that case law provides the specific definition of "harm" under the WPLA and determines the availability of emotional distress damages in particular

Page 8 - FINDINGS AND RECOMMENDATION

actions. *See Washington State Physicians Exchange & Association v. Fisons Corp.*, 122 Wash. 2d 299, 858 P.2d 1054 (1993). In *Fisons*, the Washington Supreme Court reversed a jury award and ruled that a physician could not recover for his emotional distress under the WPLA after his patient was injured by a drug he prescribed. *Id.* There, the court reasoned that because the WPLA defined "harm" broadly as "any damages recognized by the courts of this state," courts must look to evolving case law to determine which types of harm are actionable. *Id.* at 319.

Applying that technique, the *Fisons* court noted that Washington cases consistently award emotional distress damages where the harm involved "has been for injury caused directly *by the product* to the person or the property of the claimant." *Id.* at 320 (emphasis in original). By contrast, the court observed that "where emotional distress is not a consequence of physical injury, or caused by intentional conduct, Washington courts have been cautious about extending a right to recovery, especially when the distress is the consequence of an injury suffered by a third person." *Fisons,* 122 Wash. 2d at 320; *Id.* (citing *Gain v. Carroll Mill Co.*, 114 Wash.2d 254, 787 P.2d 553 (1990) (mental distress damages were held not to be compensable to close family members in a negligent infliction of emotional distress action because the family was not present at the scene of a fatal accident)).[1] Consequently, in *Fisons*, the court found that WPLA

---

[1] In these negligent infliction of emotional distress cases, Washington courts generally award emotional distress damages to family members only when they witness their loved one suffer a grave injury caused by significant physical contact. *See, e.g., Hegel v. McMahon*, 136 Wash. 2d 122, 960 P.2d 424 (1998) (family members who arrived at accident scene before substantial change in relative's condition or location were entitled to recover emotional distress damages); *accord Colbert v. Moomba Sports, Inc.*, 163 Wash. 2d 43, 176 P.3d 497 (2008) (emotional distress damages not awarded where father viewed daughter's body from a distance three hours after drowning occurred); *Gain v. Carroll Mill Co.*, 114 Wash.2d 254, 261, 787 P.2d 553 (1990) (mental distress damages not available to close family members who were not present at the scene of a fatal accident).

Page 9 - FINDINGS AND RECOMMENDATION

was not silent concerning the availability of emotional distress damages for a third party; the court there identified sufficient guidance from case law to determine that physicians may not be awarded emotional distress damages under the WPLA as a result of injuries sustained by their patients. *Id.*

By contrast, the WPLA and subsequent case law are silent on whether Bylsma may claim emotional distress damages under the circumstances described in Bylsma's complaint. In *Fisons*, ample Washington case law addressed the context of third party plaintiffs seeking emotional distress damages arising from another individual's physical injury. Here, however, Bylsma seeks emotional distress damages based on his proximity to a contaminated hamburger, not based on witnessing another's gruesome product injury. I can find no cases awarding emotional distress damages to an individual on her own product injury claim when that individual suffers no physical injury and endures no harmful physical contact with the offensive product.[2] Consistent with courts' reasoning in *Fisons* and *White River Estates*, this dearth of case law indicates that the WPLA is silent concerning emotional distress damages for plaintiffs such as Bylsma.

### 2. Intentional Conduct

The second step in the analysis focuses on whether the WPLA requires intentional conduct to impose product liability. The *Fisons* court reasoned that "[t]the level of fault involved

---

[2]Plaintiff cites two cases supposedly affirming emotional distress damages under the WPLA in the complete absence of direct physical injury. Neither apply here, since in both cases the product at issue caused a physical injury to a victim, permitting a third party to recover under the WPLA. *See Washburn v. Beatt Equip. Co.*, 840 P.2d 860, 872 (Wash. 1992) (en banc) (affirming a jury verdict awarding $2 million to the wife of an explosion victim for loss of consortium); *Ayers v. Johnson & Johnson Baby Prods. Co.*, 818 P.2d 1337, 1339 (Wash. 1991) (en banc) (affirming a jury verdict in favor of parents and guardian ad litem of a child who suffered brain damage after inhaling baby oil).

Page 10 - FINDINGS AND RECOMMENDATION

in a [WPLA] claim, however, may be considerably less than that in an intentional tort claim. In a product liability claim, liability can be predicated on negligence or even on strict liability." *Id.* at 322. Following similar logic but analyzing a different statute, the court in *White River Estates* found that the statute at issue (prohibiting a mobile home owner from "unreasonably" denying consent for an tenant to assign his or her property) did not provide a remedy for emotional distress damages because a violation did not require intentional conduct. *White River Estates v. Hiltbruner*, 134 Wash. 2d 761, 768-69, 953 P.2d 796 (1988) ("When a person acts 'unreasonably' in light of the circumstances such action is similar to negligence, not an intentional tort.").

As described in *Fisons*, the WPLA permits product liability claims without proof of intentionality. Moreover, Bylsma's complaint alleges no intentional conduct by defendants. Because Bylsma's claim does not sound in intentional tort, as a matter of law he cannot seek emotional distress damages for the alleged WPLA violation.

### B.     Punitive Damages

The WPLA provides relief only for those damages recognized by Washington courts. *See* Wash. Rev. Code § 7.72.010(5) ("'Harm' includes any damages recognized by the courts of this state"). However, punitive damages are not recoverable in Washington unless specifically authorized by statute. *See, e.g., Dailey v. North Coast Lift Ins. Co.*, 129 Wash.2d 572, 919 P.2d 589 (1996).[3] Therefore, as a matter of law, Bylsma may not recover punitive damages in this action.

### C.     Other Claims

Bylsma's claims based in negligence and vicarious liability also fail as a matter of law.

---

[3] Additionally, Bylsma concedes that the WPLA does not provide for punitive damages.

Page 11 - FINDINGS AND RECOMMENDATION

As described above, once the product liability claim falls within the scope of the WPLA, other causes of action are preempted. *See also Washington State Physicians Exchange & Association v. Fisons Corp.*, 122 Wash. 2d 299, 323, 858 P.2d 1054 (1993) (plaintiff's negligence cause of action preempted by WPLA because a claim previously based on negligence is within the WPLA's definition of a product liability claim). Thus, the WPLA preempts Bylsma's second and third causes of action, both of which are based on negligence theories.

In sum, Bylsma cannot recover economic distress damages or punitive damages under the WPLA and his other claims are preempted.

## CONCLUSION

For the reasons described above, defendants' Motion for Judgment on the Pleadings (#14) should be GRANTED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.

/
/
/
/
/
/
/
/
/
/

Page 12 - FINDINGS AND RECOMMENDATION

When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 3rd day of September, 2010.

_____
Honorable Paul Papak
United States Magistrate Judge

Page 13 - FINDINGS AND RECOMMENDATION